IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

GORDON NUNES,
    Plaintiff,

vs.                                    Case No.: 3:14cv109/MCR/EMT

UNITED STATES,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

        Plaintiff Gordon Nunes ("Nunes"), a federal inmate proceeding pro se, commenced this action in the Circuit Court in and for Escambia County, Florida, Case No. 2013-CA-002078 (*see* doc. 1, attached Complaint/Petition for Medical Negligence). Defendant the United States ("United States") removed the case to federal court (doc. 1). Now before the court is a motion to dismiss filed by the United States (doc. 41). Nunes responded in opposition to the motion (doc. 43).

        The case has been referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); and Fed. R. Civ. P. 72(b). For the reasons set forth below, the court recommends that the motion to dismiss be granted.

I.    BACKGROUND

        On September 20, 2012, Nunes filed an administrative tort claim with the federal Bureau of Prisons ("BOP") (doc. 41, Ex. 1). In his administrative claim, he alleged that soon after he arrived at the Federal Prison Camp in Pensacola, Florida ("FPC-Pensacola") in mid-January of 2011, he was assigned to a work detail involving cleaning parking lots, raking leaves, and mowing, edging, and blowing grass (*id.*). He alleged his lungs began to burn and hurt (*id.*). Nunes alleged he complained to the BOP medical staff, and staff responded that Nunes should wear a mask while he worked (*id.*). Nunes alleged that on January 26, 2011, the medical staff issued him a medical restriction, which

restricted him from outdoor work and exposure to chemicals, dust, and irritants (*id.*). Nunes alleged he worked a total of 3–4 weeks cutting grass and was then reassigned to janitorial work, where he was still exposed to the outdoors despite his medical restrictions (*id.*). He alleged he continued to experience lung problems, and on August 16, 2011, BOP medical staff diagnosed him with a sinus infection and bronchitis (*id.*). Nunes alleged two days later, a doctor at a non-BOP hospital diagnosed him with pneumonia and discovered a mass in his left lung (*id.*). Nunes alleged that during a pre-operative appointment with a non-BOP surgeon on November 8, 2011, the surgeon advised that his left lung was collapsed and non-functioning, and needed to be removed (*id.*). Nunes alleged the surgeon asked him if he had been exposed to dust, grass particles, and bugs, and Nunes responded that he had mowed grass for 3–4 weeks despite his medical restrictions (*id.*). Nunes alleged the surgeon explained that the top lobe of his left lung retained those particles due to the mass that was blocking his airways, and caused his lung to collapse and cease functioning (*id.*). Nunes alleged he continued to have lung problems (*id.*). He alleged he had surgery on January 13, 2012, during which the surgeon removed the non-cancerous mass and was able to save his lung (*id.*). In his administrative tort claim, Nunes complained that BOP medical staff failed to provide appropriate post-operative medical care after his lung surgery (*id.*). He alleged he suffered a severe cold with chest congestion, and pain in his head and chest (*id.*). Nunes also alleged that on March 17, 2012, he was cleared by the medical staff to go back to work with certain restrictions, including a restriction from working with chemicals (*id.*). Nunes alleged that on March 20, 2012, he was assigned to work in the institutional kitchen and required to use a certain cleaner (*id.*). He alleged the next day, he suffered burning and pain in his throat and lungs (*id.*). Nunes alleged that on May 10, 2012, a non-BOP doctor performed a bronchoscope, biopsied his lung, and removed a large mucus plug, which had caused the pain he had been experiencing since the surgery (*id.*). He alleged that on June 21, 2012, BOP medical staff advised him that the medical treatment for his lung was complete, and he would be returned to work (*id.*). He alleged he continued to suffer burning in his lungs and constant soreness and pressure in the top left lobe of his lung (*id.*). Nunes sought $15,000,000.00 as compensation for pain in his left lung and lower chest, headaches, inability to sleep, and blurred vision (*id.*). Nunes's administrative tort claim was denied on March 14, 2013 (doc. 41, Ex. 2).

Nunes filed the instant complaint for negligence on or about September 10, 2013 (doc. 1, attached Complaint). He alleges:

> 1. This is an action for damages that is 15 million ($15,000,000.00) dollars.
>
> 2. On January 20, 2011, the Defendants started a long list of events that Plaintiff suffered medical neglect, and proved ineffective care [sic] in treating the Plaintiff at Federal Prison Camp, Pensacola, Fl.
>
> 3. The Defendants caused personal injury to the Plaintiff's lung, caused by the negligent or wrongful act or omission.
>
> 4. As a result, Plaintiff was injured in and about his body and exremites [sic], suffered lung and chest pain. Therefore incurred surgery and treatment of injuries, and suffered physical handicap, and his working ability was impaired. The injures [sic] are either permant [sic] of continuing in nature, an [sic] Plaintiff will suffer the loss and impairment in the future.

(doc. 1, attached Complaint).

The United States moves for dismissal on the ground that the Inmate Accident Compensation Act ("IACA"), codified at 18 U.S.C. § 4126, constitutes the exclusive remedy available to inmates who are seeking compensation for work related injuries (doc. 41). Therefore, the court lacks jurisdiction to consider Nunes's negligence claim (*id.*).

Nunes responds that his claim is grounded in the Federal Tort Claims Act ("FTCA") (doc. 43). He contends his tort claim did not originate with a work-related injury; rather, it originated with a negligent work assignment, which then caused his injury (*id.*). He contends the BOP's negligence then continued with its provision of inadequate medical treatment for the injuries he received as a result of his negligent work assignments (*id.*).

II. ANALYSIS

The response to Plaintiff's Administrative Tort Claim reflects that his claim was denied because the exclusive remedy for work related injuries is though the IACA procedures set forth at 28 C.F.R. § 301, *et seq*. (*see* doc. 41, Ex. 2). The IACA authorizes the United States to pay "compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are

confined." 18 U.S.C. § 4126(c)(4).  The federal regulations implementing the IACA provide that such compensation "may be awarded to former federal inmates or their dependents for physical impairment or death resultant from injuries sustained while performing [prison] work assignments . . . ."  28 C.F.R. § 301.101(a).  However,  28 C.F.R. § 301.301(a) provides that no compensation for work-related injuries resulting in physical impairment will be paid prior to an inmate's release. The regulations sets forth the parameters and procedures for filing an IACA claim, which must be initiated between 15 and 45 days prior to the date of an inmate's release.[1]  28 C.F.R.  § 301.303(a).

The IACA is also the exclusive remedy for "claims alleging improper medical treatment of a work-related injury." 28 C.F.R. § 301.301; *see also* Vander v. United States Dep't of Justice, 268 F.3d 661, 663 (6th Cir. 2001).  Therefore, inmates who suffer a work-related injury or subsequent improper medical treatment for that injury are barred from pursuing tort claims under the FTCA. *See* 28 C.F.R. § 301.319 ("Inmates who are subject to the provisions of these Inmate Accident Compensation regulations are barred from recovery under the Federal Tort Claims Act"); *see also* United States v. Demko, 385 U.S. 149, 151–54, 87 S. Ct. 382, 17 L. Ed. 2d 258 (1966) (prisoners are barred from bringing FTCA claims for injuries sustained while performing work at a federal penitentiary, as the IACA is their exclusive remedy).  District courts have no jurisdiction to entertain a tort claim under the FTCA when a prisoner is covered under the IACA.  *See* Thompson v. United States, 495, F.2d 192, 193 (5th Cir. 1974) (district court lacked jurisdiction to adjudicate inmate's claim under FTCA, because IACA was exclusive means of recovery for prison-employee's work-related injuries and medical negligence and malpractice of prison medical staff's treatment of those injuries).[2]  This regulatory prohibition has been consistently upheld.  *See*  Wooten v. United States, 825 F.2d 1039, 1045 (6th Cir. 1987) (IACA barred inmate's tort claim for damages for prison officials' assigning him to job he was medically unfit to perform and which aggravated a pre-existing medical condition); Wooten v. United States, 437 F. 2d 79 (5th Cir. 1971) (injuries sustained by federal inmate, who was employed under prison industries program, as the result of the

---

[1] Nunes's release date, as reflected on the BOP website, is October 23, 2015.  *See* www.bop.gov/inmateloc/.

[2] All cases from the former Fifth Circuit handed down by the close of business on September 30, 1981, are binding on the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Case No. 3:14cv109/MCR/EMT

abrupt descent of an overloaded elevator which the inmate was riding were compensable under IACA regulations, and inmate's exclusive remedy for his injuries was under that statute; he could not maintain a tort action under the FTCA); *see also* Sturgeon v. Fed. Prison Indus., 608 F.2d 1153 (8th Cir. 1979) (IACA was exclusive remedy for inmate injured while working in metal chair fabrication area of federal prison industries while incarcerated); Granade v. United States, 356 F.2d 837, 844 (2d Cir. 1966) (IACA was inmate's exclusive remedy for seeking damages under FTCA for injuries he received while performing work assignment); *see also, e.g.,* Mays v. United States, 567 F. App'x 81, 82 (3d Cir. 2014) (unpublished) (IACA provided exclusive remedy for work-related injury); Cabello v. United States, 427 F. App'x 398, 399 (5th Cir. 2011) (unpublished) (IACA provided exclusive remedy for inmate's work-related injury and negligent medical treatment for said injury); Walker v. Reese, 364 F. App'x 872, 876 (5th Cir. 2010) (unpublished) (same); Smith v. United States, 561 F. 3d 1090, 1099 (10th Cir. 2009) (unpublished) (IACA provided exclusive remedy for work-related injury); Baynes v. United States, 302 F. App'x 334, 336 (6th Cir. 2008) (unpublished) (same); Colleen v. Lamanna, 248 F. App'x 357, 362 (3d Cir. 2007) (unpublished) (IACA is exclusive remedy for federal prisoners seeking compensation for injuries sustained during penal employment and subsequent aggravation of injuries by negligence and malpractice of prison doctors); Cordoba v. Morrison, 155 F. App'x 933, 934 (8th Cir. 2005) (unpublished) (exclusive remedy for work-related injury was under the IACA).

Here, Nunes seeks damages for BOP officials' assigning him to work which he was medically unable to perform and causing him injury, and then engaging in medical negligence and malpractice in their treatment of said injury. The IACA precludes Plaintiff's attempt to secure relief through the FTCA. Instead, Plaintiff must apply for relief under the IACA at the appropriate time.

Accordingly, it is respectfully **RECOMMENDED**:

1. Defendant's motion to dismiss (doc. 41) be **GRANTED**.
2. The clerk enter judgment accordingly and close the file.

At Pensacola, Florida, this 28<u>th</u> day of October 2014.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**